IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Forest Clayton,<br><br>                Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                Respondents. | No. CV-15-0543-PHX-SMM (ESW)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE STEPHEN M. McNAMEE, UNITED STATES SENIOR DISTRICT JUDGE:**

      Pending before the Court is Forest Clayton's ("Petitioner") Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") (Doc. 1). Respondents have answered (Doc. 10), and Petitioner has replied (Doc. 11). The matter is deemed ripe for consideration.

      The Petition contains one ground for relief. Petitioner alleges that his trial counsel was constitutionally ineffective in connection with plea agreements that Petitioner signed. The Petition is timely and the ground for relief is not procedurally defaulted. The undersigned, however, finds that the ground for relief is meritless. It is therefore recommended that the Court deny and dismiss the Petition with prejudice. It is also recommended that the Court deny Petitioner's request for an evidentiary hearing.

# I. BACKGROUND

## A. Petitioner Entered into Plea Agreements in Three Separate Cases

On March 1, 2012, Petitioner entered into plea agreements in three criminal cases filed in the Superior Court of Arizona in Maricopa County. The cases relate to events that took place in May 2011.

### 1. Case No. CR2011-123862 (Comerica Robbery)

On May 6, 2011, Petitioner entered a Comerica bank branch, handed an employee a note stating "this is a robbery," and told the employee that the robbery would be easy and no one would get hurt. (*Id*. at 77). The employee gave Petitioner $2,494 from the cash drawer and Petitioner left. (*Id*.).

In his plea agreement, Petitioner agreed to plead guilty to robbery, a class 4 non-dangerous felony. Petitioner also agreed to pay restitution to Comerica in the amount of $2,499 plus an additional amount not to exceed $1,000. (*Id*. at 54-56).

### 2. Case No. CR2011-048276 (Days Inn Armed Robbery/Comfort Inn Attempted Armed Robbery)

On May 10, 2011, Petitioner entered a Days Inn motel and told an employee that he was interested in renting a room. (*Id*. at 78). Petitioner then placed a bag on the counter, placed his hand inside the bag, and told the employee "I have a gun in the bag. I don't want to shoot you. Just give me the money. . . ." (*Id*.). The employee gave Petitioner $300 in cash from the register and Petitioner left. (*Id*.).

On May 12, 2011, Petitioner entered a Comfort Inn motel and told an employee that he wanted to rent a room. (*Id*.). Petitioner placed a bag on the counter, placed his hand inside the bag, and told the employee that he was robbing the motel and that he would shoot the employee if the employee did not give him the money from the register. (*Id*.). After the employee fled from the front desk to the back office, Petitioner left the motel. (*Id*.).

Petitioner agreed to plead guilty to (i) attempted armed robbery, a class 3 non-dangerous felony and (ii) armed robbery, a class 2 non-dangerous felony. Petitioner also

agreed to pay restitution to the Days Inn motel in the amount of $300 plus an additional amount not to exceed $1,000. (*Id*. at 62-64).

### 3. Case No. CR2011-125379   (Bank of America Robbery/Circle K Armed Robbery)

On May 15, 2011, Petitioner entered a Circle K store and approached the clerk. (*Id*. at 78). Petitioner placed his hand inside a plastic bag and told the clerk "this is a simple robbery. Give me all the cash out of the register." (*Id*.). The clerk gave Petitioner $60 in cash. Petitioner asked "where's all the twenties, boss?" (*Id*.). The clerk explained that there were no twenty dollar bills in the register. Petitioner then told the clerk to give him five cartons of cigarettes. (*Id*. at 78-79).

On May 18, 2011, Petitioner entered a Bank of America branch, gave an employee a note that read "this is a robbery," and told the employee to give him all the money from the employee's cash drawer except for the "tracker packs." (*Id*. at 79). The employee gave Petitioner $5,350 in cash. (*Id*.).

Petitioner agreed to plead guilty to (i) armed robbery, a class 2 non-dangerous felony with one prior felony conviction and (ii) robbery, a class 4 non-dangerous felony. (*Id*. at 58-60). Petitioner agreed to pay restitution to Circle K in the amount of $360 plus an additional amount not to exceed $500. (*Id*. at 58). In addition, Petitioner agreed to pay restitution to Bank of America in the amount of $5,353 plus an additional amount not to exceed $1,000. (*Id*.).

### B. Change of Plea Hearing and Sentencing

On March 1, 2012, the trial court held a change of plea hearing in all three cases. (Doc. 10-3 at 109-39). The trial court accepted Petitioner's guilty pleas. (Doc. 10-1 at 66-75). At the April 4, 2012 sentencing hearing, the trial court sentenced Petitioner as follows:

### 1. Case No. CR2011-123862 (Comerica Robbery)

The trial court suspended the imposition of sentence on Petitioner's robbery conviction and imposed a three-year term of probation, to be served concurrently to the

three-year probationary term imposed in Case No. CR2011-125379. (Doc. 10-3 at 154; Doc. 10-1 at 94-97). The trial court ordered restitution to Comerica bank in the amount of $2,494. (Doc. 10-3 at 157; Doc. 10-1 at 95).

### 2. Case No. CR2011-048276 (Days Inn Armed Robbery/Comfort Inn Attempted Armed Robbery)

The trial court found aggravating factors and sentenced Petitioner to thirteen years of incarceration on Count 1 (attempted armed robbery). (Doc. 10-3 at 149-50; Doc. 10-2 at 2-5). The trial court also sentenced Petitioner to thirteen years of incarceration on Count 2 (armed robbery), to be served concurrently with the sentence on Count 1. (*Id.* at 150; Doc. 10-2 at 2-5). In addition, the trial court ordered restitution to Days Inn in the amount of $300. (Doc. 10-2 at 4).

### 3. Case No. CR2011-125379 (Bank of America Robbery/Circle K Armed Robbery)

The trial court again found aggravating factors and sentenced Petitioner to thirteen years of incarceration on Count 1 (armed robbery), to run concurrently with the thirteen-year sentences imposed in Case No. CR2011-048276. (Doc. 10-3 at 150-53; Doc. 10-1 at 99-103). On Count 2 (robbery), the trial court imposed a three-year term of probation. (Doc. 10-3 at 153-54; Doc. 10-1 at 99-103). In addition, the trial court ordered restitution to be paid to (i) Bank of America in the amount of $5,353 and (ii) Circle K in the amount of $240.[1] (Doc. 10-1 at 100-01).

### C. Post-Conviction Relief

On May 2, 2012, Petitioner filed a notice of post-conviction relief ("PCR") in all three criminal cases. (Doc. 10-2 at 28-31). The trial court appointed PCR counsel. (*Id.* 33-38). Petitioner's counsel notified the court that she was unable to find a colorable claim for relief in any of the cases. (*Id.* at 40-48). On November 26, 2012, Petitioner

---

[1] The ordered restitution to Circle K was less than the $360 amount set forth in the plea agreement. (Doc. 10-1 at 58). The trial court ordered the lesser amount because $240 is the amount of loss stated in the victim's ledger. (Doc. 10-3 at 156-57).

filed an identical PCR petition in each of the three cases. (*Id*. at 80-100). Petitioner contended that his trial counsel erroneously advised him that "his actions constituted armed robbery and attempted armed robbery when he stated this is a robbery while his hand was in a canvas bag." (Doc. 10-2 at 81, 88, 95). The trial court ordered the State to respond to the PCR petitions. (Doc. 10-3 at 8-11). The State filed an identical Response in each case. (*Id*. at 13-60).

On April 15, 2013, the trial court rejected Petitioner's claim that his counsel was ineffective and dismissed the PCR petitions with prejudice. (*Id*. at 62-73). Petitioner filed a Petition for Review in the Arizona Court of Appeals, to which the State responded. (*Id*. at 83-103). The Arizona Court of Appeals granted review, but denied relief. (*Id*. at 105-07). The record does not indicate that Petitioner sought further review in the Arizona Supreme Court.

On March 26, 2015, Petitioner filed the Petition (Doc. 1) seeking federal habeas relief.[2] Respondents filed their Answer on July 24, 2015 (Doc. 10). Petitioner filed his Reply on August 28, 2015 (Doc. 11).

## II. LEGAL STANDARDS

### A. Reviewing Habeas Claims on the Merits

In reviewing the merits of a habeas petitioner's claims, AEDPA requires federal courts to defer to the last reasoned state court decision. *Woods v. Sinclair*, 764 F.3d 1109, 1120 (9th Cir. 2014); *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). To be entitled to relief, a state prisoner must show that the state court's adjudication of his or her claims either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[2] Respondents do not argue, and the undersigned does not find, that this habeas proceeding is untimely under the one-year statute of limitations set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996. The statute of limitations is codified at 28 U.S.C. § 2244(d).

> Federal law, as determined by the Supreme Court of the United States; or
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2010); *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

As to relief under 28 U.S.C. § 2254(d)(1), "clearly established federal law" refers to the holdings of the U.S. Supreme Court's decisions applicable at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). A state court decision is "contrary to" such clearly established federal law if the state court (i) "applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases" or (ii) "confronts a set of facts that are materially indistinguishable from a decision of the [U.S. Supreme Court] and nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

As to relief under 28 U.S.C. § 2254(d)(2), factual determinations by state courts are presumed correct unless the petitioner can show by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.2004) (as amended) (internal quotation marks and citation omitted).

**B. Proving Ineffective Assistance of Counsel Under *Strickland v. Washington*, 466 U.S. 668 (1984)**

The "clearly established federal law" for an ineffective assistance of counsel ("IAC") claim is the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner arguing an IAC claim must establish that his or her

counsel's performance was (i) objectively deficient and (ii) prejudiced the petitioner. *Strickland*, 466 U.S. at 687. This is a deferential standard, and "[s]urmounting *Strickland's* high bar is never an easy task." *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In the habeas context, the issue is whether there is a "reasonable argument that counsel satisfied *Strickland's* deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal quotation marks and citation omitted).

In assessing the performance factor of *Strickland's* two-part test, judicial review "must be highly deferential" and the court must try not "to second-guess counsel's assistance after conviction." *Clark*, 769 F.3d at 725 (internal quotation marks and citation omitted). To be constitutionally deficient, counsel's representation must fall below an objective standard of reasonableness such that it was outside the range of competence demanded of attorneys in criminal cases. *Id.* A reviewing court considers "whether there is any reasonable argument" that counsel was effective. *Rogovich v. Ryan*, 694 F.3d 1094, 1105 (9th Cir. 2012). To establish the test's performance prong in the context of a guilty plea, a defendant must establish that his or her counsel's advice regarding the guilty plea was outside "the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985).

To establish the prejudice factor of *Strickland's* two-part test, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In other words, it must be shown that the "likelihood of a different result [is] substantial, not just conceivable." *Richter*, 562 U.S. at 112. To establish prejudice in the context of a guilty plea, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial." *Washington v. Lampert*, 422 F.3d 869, 873 (9th Cir. 2005) (quoting *Hill*, 474 U.S. at 58-59)).

Although the performance factor is listed first in *Strickland's* two-part test, a court may consider the prejudice factor first. In addition, a court need not consider both factors if the court determines that a defendant has failed to meet one factor. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both deficiency and prejudice if the habeas petitioner cannot establish one or the other).

### III.  ANALYSIS OF THE PETITION

#### A.  Petitioner's Request for an Evidentiary Hearing

Petitioner requests that the Court hold an evidentiary hearing. (Doc. 1 at 7). AEDPA imposes "an express limitation on the power of a federal court to grant an evidentiary hearing and [has] reduced considerably the degree of the district court's discretion." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999) (internal quotation marks and citation omitted). 28 U.S.C. § 2254(e)(2) provides that if a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings," no evidentiary hearing on the claim will be held in federal court unless the petitioner shows that:

> **(A)** the claim relies on:
> > **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (bold in original).

Case law has clarified that review under Section 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); *Gulbrandson v. Ryan*, 738 F.3d 976, 993 n.6 (9th Cir. 2013) (stating that *Pinholster* and the statutory text make clear that limitation on evidentiary hearings applies to Section 2254(d)(2) claims as well). In *Gulbrandson*, the Ninth Circuit Court of Appeals held that a U.S. District Court did not abuse its discretion in denying a habeas petitioner's request for an evidentiary hearing regarding the petitioner's IAC claims. The Court explained that "the state court's rejections of these claims were neither contrary to, nor involved unreasonable applications, of *Strickland*. Thus, *Pinholster* bars a habeas court from any further factual development on these claims." *Gulbrandson*, 738 F.3d at 994; *see also Stokley v. Ryan*, 659 F.3d 802, 807 (9th Cir. 2011) (finding that a habeas petitioner was not entitled to an evidentiary hearing as the petitioner failed to present a colorable IAC claim).

As explained below, the Arizona Court of Appeals' denial of Petitioner's IAC claim was not contrary to or an unreasonable application of clearly established federal law. Under *Pinholster*, *Gulbrandson*, and *Stokley*, Petitioner is therefore not entitled to an evidentiary hearing. The undersigned recommends that the Court deny Petitioner's request for an evidentiary hearing.

**B.  Merits of Petitioner's IAC Claim**

Petitioner's IAC claim pertains to his convictions for armed robbery and attempted armed robbery.[3] The State of Arizona's armed robbery statute provides as follows:

---

[3] Although the Petition states that he is challenging his convictions in all three criminal cases, Petitioner does not raise any claims challenging the constitutionality of his convictions for robbery (CR2011-123862; Count 2 in CR2011-125379). The Court may therefore dismiss with prejudice the Petition as to the robbery convictions. 28 U.S.C. § 2254(a) (providing that a habeas petitioner must allege "that he is in custody in violation of the Constitution or law or treaties of the United States").

> A person commits armed robbery if, in the course of committing robbery as defined in § 13-1902, such person or an accomplice:
> 1. Is armed with a deadly weapon or a simulated deadly weapon; or
> 2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

ARIZ. REV. STAT. § 13-1904(A).

Petitioner asserts that the offense of armed robbery requires that "the weapon weather [sic] it be real or simulated must be present." (Doc. 1 at 5). Petitioner alleges that his trial counsel was constitutionally ineffective when "she told Petitioner he simulated a weapon just by placing his hand in a large bag where no victim said they saw a simulated weapon, and no real or fake weapon was within immediate possession or available for use or the Petitioner." (Doc. 11 at 5). To support this contention, Petitioner cites *State v. Garza Rodriguez*, 791 P.2d 633 (Ariz. 1990). In *Garza Rodriguez*, the Arizona Supreme Court held that that a "mere verbal threat to use a deadly weapon, unaccompanied by the actual presence of a deadly weapon, dangerous instrument or simulated deadly weapon, does not satisfy the statutory requirement for a charge of armed robbery." *Id.* at 638.

The last state court decision reviewing Petitioner's IAC claim is the Arizona Court of Appeals' ruling that affirmed the trial court's dismissal of Petitioner's PCR petitions. As discussed below, the Arizona Court of Appeals' rejection of Petitioner's IAC claim was not an unreasonable application of *Strickland*.

### 1. *Strickland's* Performance Prong

The Arizona Court of Appeals' decision cites *State v. Bousley*, 829 P.2d 1212 (Ariz. 1992). In *Bousley*, two defendants held their hands under their clothing in such a way that the defendants appeared to have handguns and demanded money from convenience store clerks. (*Id.* at 1213). The defendants pled guilty to armed robbery. (*Id.* at 1212-13). On appeal, the defendants argued that the factual bases for their guilty pleas were insufficient under *Garza Rodriguez*. (*Id.* at 1213). The Arizona Supreme

Court rejected that claim. The Court stated that the "crucial fact in [*Garza*] *Rodriguez* was that nothing resembling a weapon was actually present; the defendant simply implied that she had a gun when she threatened to 'shoot the smile off' the cashier's face." (*Id*. at 1214). In *Bousley*, however, the defendants "did more than simply imply that they had guns; they positioned their hands under their clothing in such a way that they appeared to have deadly weapons—guns." (*Id*.). The Court concluded that "simulated deadly weapons were actually present." (*Id*.).

Here, as the Arizona Court of Appeals noted, Petitioner admitted in open court that "when he committed the armed and attempted armed robberies, he placed his hand in a bag to simulate a weapon, and he did so to coerce the victims to surrender property through force or the threatened use of force." (Doc. 10-3 at 107, 130-31, 35); *see United States v. Kaczynski*, 239 F.3d 1108, 1115 (9th Cir. 2001) (giving "substantial weight" to defendant's in-court statements). The Arizona Court of Appeals concluded that under *Bousley*, Petitioner's "counsel was correct that a person who conceals his or her hand and positions it in a manner that makes it appear that person has a deadly weapon is armed with, is using, and/or is threatening to use a simulated deadly weapon." (Doc. 10-3 at 106).

Petitioner's in-court admission that he held his "hand in a bag simulating a gun or weapon" distinguishes this case from *Garza Rodriguez*. In light of *Bousley* and the facts of this case, Petitioner has not shown that his trial counsel was objectively unreasonable or incompetent when she advised Petitioner that his actions may satisfy the elements of armed robbery and attempted armed robbery. Moreover, even if the Court finds that the performance of Petitioner's trial counsel was constitutionally deficient, Petitioner cannot establish the prejudice prong of the *Strickland* two-part test.

### 2. *Strickland's* Prejudice Prong

As mentioned in Section II(B) above, establishing prejudice in the context of a guilty plea requires a defendant to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going

to trial." *Washington*, 422 F.3d at 873 (quoting *Hill*, 474 U.S. at 58-59).  Here, Petitioner does not allege that but for his counsel's alleged erroneous advice, he would not have entered into the plea agreements and would have proceeded to trial.  Petitioner therefore has failed to show how he was prejudiced by his counsel's alleged deficient performance.

### IV.  CONCLUSION

Based on the foregoing, the undersigned concludes that it was not contrary to, nor an unreasonable application of, *Strickland* for the Arizona Court of Appeals to reject Petitioner's IAC claim contained in the Petition.  The undersigned also concludes that the Arizona Court of Appeals' decision was not based on an unreasonable determination of the facts.  The undersigned therefore recommends that the Court deny the claim on the merits.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's request for an evidentiary hearing be **DENIED**.

**IT IS RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be denied because Petitioner has not made a substantial showing of the denial of a constitutional right in his claim for relief.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the

District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 29th day of February, 2016.

_____
Eileen S. Willett
United States Magistrate Judge